UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER, et al., | Case No.  15-cv-00216-DMR |
| Plaintiffs, | |
| v. | ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| ASHFORD HOSPITALITY TRUST, INC., | |
| Defendant. | Re: Dkt. No. 66 |

Plaintiffs Civil Rights Education and Enforcement Center ("CREEC"), Ann Cupolo-Freeman, and Julie Reiskin move for preliminary approval of a class action settlement.  [Docket No. 66.]  Defendant Ashford Hospitality Trust, Inc. ("Ashford") does not oppose the motion. [Docket No. 70.]  The court conducted a hearing on December 10, 2015.  For the following reasons, the court grants preliminary approval of the proposed class settlement.

I.      BACKGROUND

   A.  Litigation History

In this class action, Plaintiffs seek declaratory and injunctive relief for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq*., and California's Unruh Civil Rights Act, California Civil Code section 51, regarding the provision of wheelchair-accessible transportation by hotels.  Plaintiff CREEC is a civil rights organization based in Denver, Colorado that is dedicated to ensuring that "persons with disabilities participate in our nation's civic life without discrimination."  [Docket No. 54 (Am. Compl.) ¶ 9.]  Plaintiffs Cupolo-Freeman and Reiskin, who are CREEC members, each have disabilities within the meaning of the ADA and California law.  Both use wheelchairs for mobility.  Defendant Ashford is a publicly-traded real estate investment trust that owns approximately 125 hotels, 73 of which offer transportation services to their guests and are therefore subject to ADA transportation

1    requirements.  These 73 hotels are spread among 20 states.

2         Plaintiffs assert that the ADA regulations require any Ashford hotel that offers

3    transportation services to purchase accessible vehicles or to provide equivalent transportation

4    services to persons with disabilities.  *See* 49 C.F.R. §§ 37.101, 37.171.  Whether the hotel must

5    purchase accessible vehicles, or instead provide equivalent transportation services, depends upon

6    the capacity of the vehicle (over 16 persons, or 16 persons or less) and whether the hotel operates

7    a fixed route transportation system, or a demand-responsive system.  The lowest requirement (in

8    this case, for hotels with demand responsive systems using a vehicle with capacity for 16 persons

9    or less) is that the hotel provide equivalent transportation services if they do not own an accessible

10   vehicle.

11        In their amended complaint, Plaintiffs allege two claims against Ashford: 1) disability

12   discrimination under the ADA, 42 U.S.C. § 12182(a), for failing to ensure that transportation

13   vehicles in use at its hotels are readily accessible to and usable by individuals with disabilities; and

14   2) violation of California Civil Code section 51(b) for denying Plaintiffs and the class members'

15   rights to full and equal accommodations, advantages, facilities, privileges, or services offered at

16   Ashford's hotels.  Plaintiffs seek declaratory relief and a permanent injunction requiring Ashford

17   to comply with the ADA and the Unruh Act, as well as an award of reasonable attorneys' fees and

18   costs.  Plaintiffs do not seek damages on behalf of the class or the named plaintiffs.

19        **B.  Discovery and Mediation**

20        The parties conducted an in-person mediation session in July 2015 before retired

21   Magistrate Judge James Larson.  They continued to negotiate by telephone and email after that

22   session, and simultaneously engaged in discovery and investigation.  Plaintiffs contacted 68 of the

23   73 Ashford hotels that provide transportation services to investigate whether those hotels provide

24   equivalent accessible transportation services.  Plaintiffs also called third party transportation

25   providers identified by Ashford to determine whether they were capable of providing equivalent

26   accessible transportation services.

27        Following continued negotiations, the parties agreed to settle this matter in September

28   2015, and executed a settlement agreement on October 23, 2015.  Plaintiffs filed an unopposed

2

United States District Court
Northern District of California

1    motion for preliminary approval of the settlement agreement on November 5, 2015.  The court

2    held a hearing on the motion on December 10, 2015.

3        **C.  The Settlement Agreement**

4        The complete terms of the proposed settlement agreement are set forth in the Joint

5    Stipulation and Settlement Agreement, which is attached as Exhibit A to Plaintiffs' motion.  Pls.'

6    Mot. Ex. A (Settlement Agreement).

7            **1.        Injunctive Relief**

8        The Settlement Agreement provides a comprehensive scheme for injunctive relief,

9    requiring all Ashford-owned and/or operated hotels to come into compliance with ADA

10   regulations that require hotels that offer transportation services to provide equivalent

11   transportation services to people who use wheelchairs or scooters.  The Settlement Agreement sets

12   forth what "compliance" means, with specific attention to ensuring that any third party

13   transportation providers utilized by Ashford hotels provide equivalent accessible transportation.

14   Settlement Agreement ¶ 5.  The Settlement Agreement explicitly requires that Ashford hotels

15   provide accurate information to potential hotel guests so that no guests are erroneously deterred.

16   *Id.* ¶ 5.c.  Ashford will provide information to Plaintiffs regarding the current status of the hotels

17   that provide transportation services to their guests, as well as any applicable third party

18   transportation providers.  *Id.* ¶ 4.  Finally, Ashford will notify all companies that directly manage

19   Ashford's hotels about the Settlement Agreement and the management companies' obligations

20   under the law, as well as any hotel's non-compliance with either.  *Id.* ¶ 6.

21       To ensure that Ashford hotels come into compliance, the Settlement Agreement sets forth a

22   multistage, three-year monitoring process that involves both a third-party monitor and monitoring

23   by Plaintiffs' counsel.  *Id.* ¶ 7.  Ashford will continue to provide information to Plaintiffs

24   throughout the monitoring process, and the monitoring and compliance process is designed to

25   ensure that all hotels are in full compliance with the ADA by the end of the third year of the

26   Settlement Agreement.  *Id.* ¶¶ 7, 8.  The parties have mutually selected a third-party monitor,

27   Progressive Management Resources, Inc. ("PMR"), which is a firm with experience in compliance

28   and monitoring with respect to public accommodations.  Ashford will pay the fees and costs of

3

1   monitoring.  Settlement Agreement ¶ 7.  The parties have also agreed to a dispute resolution

2   process during the term of the Settlement Agreement.  *Id*. at ¶ 14.

3   **2.    Released Claims**

4   The settlement agreement defines the class as

5
6
7
8

> all individuals with disabilities who use wheelchairs or scooters for
> mobility who, from January 15, 2013 to the date of preliminary
> approval of the Settlement, have been denied the full and equal
> enjoyment of transportation services offered to guests at Hotels
> owned and/or operated by Ashford because of the lack of equivalent
> accessible transportation services at those Hotels.

9   Settlement Agreement ¶ 1.  Plaintiffs and the class members will release any and all past or

10  present claims as of the date of preliminary approval of the settlement for injunctive or declaratory

11  relief against Ashford or its subsidiary or affiliated entities that are based on the ADA, the Unruh

12  Act, or any public accommodation provision of any federal, local, or state statutory, regulatory, or

13  common law concerning the provision of wheelchair accessible transportation services at Ashford

14  hotels.  *Id*. at ¶ 15(a).  While Plaintiffs Cupolo-Freeman and Reiskin further agree to release any

15  claims for monetary damages against Ashford, its subsidiary, and affiliated entities, the Settlement

16  Agreement does not release any claims on behalf of the class members for damages.  *Id*. ¶ 15.

17  **3.    Class Notice**

18  The parties propose dissemination of the class notice by emailing the notice to known

19  disability advocacy groups and independent living centers.  Plaintiffs have submitted a nationwide

20  list of several hundred organizations to whom Plaintiffs propose sending the class notice.  [Docket

21  No. 73 (Campins Decl., Dec. 11, 2015 Ex. 3 (Class Notice Organizations List).]  In addition,

22  Plaintiffs will provide the notice to those persons with disabilities who have contacted CREEC

23  about problems with accessible hotel transportation.  The proposed class notice is attached as

24  Exhibit B to Plaintiffs' motion.  Pls.' Mot. Ex. B (Notice).

25  **4.    Attorneys' Fees and Costs and Costs of Administration and Monitoring**

26  The Settlement Agreement authorizes class counsel to seek an award of attorneys' fees and

27  costs up to $165,000.  This amount includes fees for work performed in connection with this

28  lawsuit as well as fees for future monitoring and evaluating compliance with the settlement.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1  Settlement Agreement ¶ 11.  Counsel estimates that the fees for monitoring the settlement in this

2  case will total at least $30,000 over the course of three years.

3  **II.      DISCUSSION**

4        **A.  Conditional Class Certification**

5        Plaintiffs seek conditional certification of a settlement class under Federal Rules of Civil

6  Procedure 23(a) and 23(b)(2).  A court may only certify a class action if it satisfies the four

7  prerequisites identified in Rule 23(a) and fits within one of the three subdivisions of Rule 23(b).

8  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Class certification requires the

9  following: (1) the class must be so numerous that joinder of all members individually is

10  impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

11  defenses of the class representatives must be typical of the claims or defenses of the class; and (4)

12  the person representing the class must be able to fairly and adequately protect the interests of all

13  class members.  *See* Fed. R. Civ. P. 23(a); *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003).

14  "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,'

15  'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively."  *United Steel,*

16  *Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v.*

17  *ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).  Certification under Rule 23(b)(2) is

18  appropriate where "the party opposing the class has acted or refused to act on grounds that apply

19  generally to the class, so that final injunctive relief or corresponding declaratory relief is

20  appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  In the settlement context,

21  the court must pay "undiluted, even heightened, attention" to class certification requirements

22  because the court will not have the opportunity to adjust the class based on information revealed at

23  trial.  *See Staton,* 327 F.3d at 952-53 (quoting *Amchem*, 521 U.S. at 620); *Hanlon v. Chrysler*

24  *Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (same).

25        Plaintiffs ask the court to conditionally certify the following class:

26             All individuals with disabilities who use wheelchairs or scooters for
           mobility who, from January 15, 2013 to the date of preliminary

27             approval of the Settlement, have been denied the full and equal
           enjoyment of transportation services offered to guests at Hotels

28             owned and/or operated by Ashford because of the lack of equivalent

accessible transportation services at those Hotels.

"Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (citation omitted).  The court finds that the class is clearly defined to identify the relevant time period, January 15, 2013 until the date of preliminary approval.  It also clearly describes the people who are included in the class (persons who use wheelchairs or scooters for mobility), what those individuals must have experienced (denial of full and equal enjoyment of transportation services because of the lack of equivalent accessible transportation services), and where those experiences must have occurred (at hotels owned and/or operated by Ashford).  Accordingly, the class is clearly ascertainable.  *See, e.g., Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2007 WL 1223755, at *4 (N.D. Cal. April 25, 2007) (finding class defined as "All legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores" sufficiently ascertainable).

Once an ascertainable and identifiable class has been defined, the court must determine whether Plaintiffs have satisfied the requirements under Rule 23(a).  First, Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Plaintiffs assert that the proposed class satisfies the numerosity requirement because it covers 73 hotels at which millions of persons have stayed during the class period, (*see* Campins Decl. Ex. 1), and highlight census figures that indicate that more than 3.6 million Americans use wheelchairs for mobility.  McGarry Decl. Ex. 1.  Therefore, Plaintiffs argue, if "just 15 of those 3.6 million wheelchair users each year stayed at, or were deterred from staying at, one of the Ashford Hotels at issue since 2013, the numerosity requirement is met." Pls.' Mot. 13 (citing *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) ("A class or subclass with more than 40 members 'raises a presumption of impracticability based on numbers alone.'" (citation omitted))).  Further, the proposed class is geographically dispersed, covering hotels in 20 states, which supports a finding that joinder is impracticable.  *See Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648

1   (C.D. Cal. 1996).  Using "common sense assumptions" and reasonable inferences, *see*

2   *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal.

3   2008), the court finds that Plaintiffs satisfy Rule 23's numerosity requirement.

4        With respect to commonality, Rule 23(a)(2) requires that there be "questions of law or fact

5   common to the class."  Fed. R. Civ. P. 23(a)(2).  "All questions of fact and law need not be

6   common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates

7   is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the

8   class."  *Hanlon*, 150 F.3d at 1019; *see also Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506

9   (N.D. Cal. 2012).  Commonality may be found where a defendant allegedly fails to have in place

10  policies or practices required by law.  *See, e.g., Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir.

11  2014) (affirming class certification based on common questions that included medical policies and

12  practices that allegedly created a substantial risk of serious harm).  Here, the issues facing the class

13  arise from common questions involving Ashford's obligations to provide ADA-compliant

14  transportation services to guests.  A common issue also exists regarding the impact of federal tax

15  provisions governing real estate investment trusts.  Specifically, one of Ashford's defenses

16  concerns tax provisions which condition favorable tax treatment of real estate investment trusts on

17  limitations on their ability to operate or manage hotels that they own.  As a result, Ashford

18  contracts with third parties to manage its hotels.  Ashford asserts in this litigation that those

19  management companies are responsible for providing transportation services, and that it does not

20  provide those third parties with any uniform policy or plan regarding the operation of

21  transportation services at its hotels.  Whether this is an adequate defense to ADA claims is a

22  question common to every class member.  The court finds that these issues are sufficient to

23  establish commonality.

24        Plaintiffs have also satisfied Rule 23(a)(3)'s typicality requirement.  Typicality requires

25  that "the claims or defenses of the representative parties are typical of the claims or defenses of the

26  class."  Fed. R. Civ. P. 23(a)(3).  The purpose of the requirement "is to assure that the interest of

27  the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*,

28  976 F.2d 497, 508 (9th Cir. 1992).  Typicality is "satisfied when each class member's claim arises

United States District Court
Northern District of California

7

1    from the same course of events, and each class member makes similar legal arguments to prove

2    the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quotation marks

3    omitted) (quoting *Marisol v. Giuliani,* 126 F.3d 372, 376 (2nd Cir. 1997)), *abrogated on other*

4    *grounds by Johnson v. Cal.*, 543 U.S. 499, 504-05 (2005).  Here, the named Plaintiffs' personal

5    claims are similar to those of the absent class members; namely, Ashford's hotels' failure to

6    provide accessible transportation services.

7         Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately

8    protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To satisfy constitutional due process

9    concerns, absent class members must be afforded adequate representation before entry of a

10   judgment which binds them."  *Hanlon*, 150 F.3d at 1020.  To determine whether the adequacy

11   prong is satisfied, courts consider the following two questions: "(1) [d]o the representative

12   plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the

13   representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

14   *Staton*, 327 F.3d at 957 (citation omitted); *see also Fendler v. Westgate-California Corp.*, 527

15   F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and counsel also must have

16   sufficient "zeal and competence" to protect class interests).  There is no indication of any conflict

17   between the class and Plaintiffs and/or their counsel.  Class counsel are highly skilled and

18   experienced class action litigators.  They also have significant expertise in vindicating the rights of

19   disabled individuals.   The court is well-satisfied that Plaintiffs and their counsel have and will

20   continue to pursue this action vigorously on behalf of Plaintiffs and the proposed class members.

21        In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate

22   for certification under one of the categories in Rule 23(b).  *See* Fed. R. Civ. P. 23(b); *Hanlon,* 150

23   F.3d at 1022.  The court finds that certification is appropriate under Rule 23(b)(2).  Certification

24   under Rule 23(b)(2) is proper where "the party opposing the class has acted or refused to act on

25   grounds that apply generally to the class, so that final injunctive relief or corresponding

26   declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(2) is satisfied where

27   "'class members complain of a pattern or practice that is generally applicable to the class as a

28   whole.'"  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (quoting *Walters v. Reno*, 145

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1   F.3d 1032, 1047 (9th Cir. 1998)).  As discussed above, Plaintiffs allege that Ashford has a practice

2   of failing to provide equivalent accessible transportation services at its hotels that provide

3   transportation services to guests.  Plaintiffs seek only injunctive and declaratory relief.

4        In sum, the record is sufficient to support conditional certification of the class under Rules

5   23(a) and 23(b)(2).

6        **B.  Preliminary Fairness Determination**

7        Federal Rule of Civil Procedure 23(e) requires the court to determine whether a proposed

8   settlement is "'fundamentally fair, adequate, and reasonable.'"  *Staton*, 327 F.3d at 952 (quoting

9   *Hanlon*, 150 F.3d at 1026; *see also* Fed. R. Civ. P. 23(e) (court may only approve class action

10  settlement based on finding that settlement is "fair, reasonable, and adequate.").  "The purpose of

11  Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements

12  affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation

13  omitted).  "The initial decision to approve or reject a settlement proposal is committed to the

14  sound discretion of the trial judge."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625

15  (9th Cir. 1982).

16       To make a fairness determination, the court must balance a number of factors, including

17  the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further

18  litigation; the risk of maintaining class action status throughout the trial; the amount offered in

19  settlement; the extent of discovery completed; the stage of the proceedings; and the experience and

20  views of counsel.  *Staton*, 327 F.3d at 959.  In making this evaluation, the court is not to "reach

21  any ultimate conclusions on the contested issues of fact and law which underlie the merits of the

22  dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and

23  expensive litigation that induce consensual settlements."  *Officers for Justice*, 688 F.2d at 625.

24  "The relative importance to be attached to any factor will depend upon and be dictated by the

25  nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and

26  circumstances presented by each individual case."  *Id.*  Further, as some of these factors cannot be

27  fully assessed until the court conducts its final fairness hearing, "a full fairness analysis is

28  unnecessary at this stage."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)

9

1   (quotation marks and citation omitted).  Preliminary approval of a settlement and notice to the

2   class is appropriate if "the proposed settlement appears to be the product of serious, informed,

3   non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

4   treatment to class representatives or segments of the class, and falls within the range of possible

5   approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing

6   Manual for Complex Litigation, Second § 30.44 (2d ed. 1985)).

7           Here, the factors set forth in *In Re Tableware Antitrust Litigation* weigh in favor of

8   preliminary approval of the settlement.  First, the parties participated in private mediation, which

9   "tends to support the conclusion that the settlement process was not collusive." *Villegas v. J.P.*

10  *Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov.

11  21, 2012).  Additionally, the parties reached full agreement on the injunctive relief portion of the

12  settlement before negotiating attorneys' fees and costs.  Campins Decl. ¶ 5.  Second, there are no

13  obvious deficiencies.  The settlement provides significant and substantial injunctive relief to the

14  class members, in that all Ashford hotels that provide transportation services to guests will provide

15  either a wheelchair-accessible vehicle or equivalent accessible transportation.  The hotels will be

16  held accountable pursuant to a thorough monitoring process, which is designed to achieve full

17  compliance with the ADA by the end of the third year of the Settlement Agreement.  The

18  settlement does not grant preferential treatment to the class representatives or segments of the

19  class.

20          **C.  Class Notice**

21          The court next considers the sufficiency of the parties' notice plan.  Where a proposed

22  settlement has been reached by the parties, the "court must direct notice in a reasonable manner to

23  all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  The court

24  must ensure that the parties' notice plan provides for "the best notice that is practicable under the

25  circumstances, including individual notice to all members who can be identified through

26  reasonable effort" and that the notice itself explains in easily understood language the nature of the

27  action, definition of the class, class claims, issues and defenses, ability to appear through

28  individual counsel, procedure to request exclusion, and the binding nature of the class judgment.

1   Fed. R. Civ. P. 23(c)(2)(B).

2          In this case, there is no practical way to create a list of individuals who use wheelchairs or

3   scooters and patronize Ashford hotels.  The parties propose dissemination of the class notice by

4   emailing the notice to known disability advocacy groups and independent living centers.  Class

5   counsel has compiled and submitted a nationwide list of several hundred organizations.  In

6   addition, Plaintiffs will provide the notice to those persons with disabilities who have contacted

7   CREEC about problems with accessible hotel transportation.  The court is satisfied that this notice

8   plan is the best notice practicable under the circumstances.  The court also finds that the proposed

9   class notice adequately describes the nature of the action, summarizes the terms of the settlement,

10  identifies the class and provides instruction on how to object, and sets forth the proposed fees and

11  expenses to be paid to Plaintiffs' counsel in clear, understandable language.  In sum, the proposed

12  notice plan satisfies the requirements of Rule 23(c)(2)(B).

### III.   CONCLUSION

13

14         For the reasons stated above, Plaintiffs' motion for preliminary approval of the class action

15  settlement is GRANTED as follows:

16         1.     Pursuant to Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), the

17  court conditionally certifies, for settlement purposes only, a proposed settlement class comprised

18  of all individuals with disabilities who use wheelchairs or scooters for mobility who, from January

19  15, 2013 to December 10, 2015, have been denied the full and equal enjoyment of transportation

20  services offered to guests at Hotels owned and/or operated by Ashford because of the lack of

21  equivalent accessible transportation services at those Hotels.

22         2.     The settlement agreement is preliminarily approved as fair, reasonable, and

23  adequate pursuant to Federal Rule of Civil Procedure 23(e).

24         3.     Defendant shall issue CAFA notice to the appropriate government entities by no

25  later than December 18, 2015.

26         4.     The court approves the form of the proposed notice and notice dissemination plan

27  and orders Plaintiffs to issue notice to the class by December 21, 2015 (the "notice deadline").

28         5.     Class Counsel and Plaintiffs shall file a motion for attorneys' fees and costs and for

United States District Court
Northern District of California

11

final approval of the settlement within 45 days after the notice deadline.

     6.    Any member of the settlement class who wishes to object to the settlement shall file any objections by February 19, 2016.

     7.    A hearing on the final approval of the settlement will be heard on March 10, 2016 at 11:00 a.m.

**IT IS SO ORDERED.**

Dated: December 18, 2015

