UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ASHFORD HOSPITALITY TRUST, INC., <br><br> Defendant. | Case No. 15-cv-00216-DMR <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> Re: Dkt. Nos. 81, 82 |

Plaintiffs Civil Rights Education and Enforcement Center ("CREEC"), Ann Cupolo-Freeman, and Julie Reiskin move for final approval of a class action settlement and for an award of attorneys' fees and costs. [Docket Nos. 81, 82.] Defendant Ashford Hospitality Trust, Inc. ("Ashford") does not oppose the motion for final approval. [Docket No. 85.] The court conducted a hearing on March 10, 2016. For the following reasons, the court grants final approval of the proposed class settlement and awards attorneys' fees and costs to class counsel.

## I.  BACKGROUND

### A.  Litigation History

In this class action, Plaintiffs seek declaratory and injunctive relief for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*, and California's Unruh Civil Rights Act, California Civil Code section 51, regarding the provision of wheelchair-accessible transportation by hotels. Plaintiff CREEC is a civil rights organization based in Denver, Colorado that is dedicated to ensuring that "persons with disabilities participate in our nation's civic life without discrimination." [Docket No. 54 (Am. Compl.) ¶ 9.] Plaintiffs Cupolo-Freeman and Reiskin, who are CREEC members, each have disabilities within the meaning of the ADA and California law. Both use wheelchairs for mobility. Defendant Ashford is a publicly-

traded real estate investment trust that owns approximately 125 hotels, 54 of which offer transportation services to their guests and are therefore subject to ADA transportation requirements.[1] These 54 hotels are spread among multiple states.

Plaintiffs assert that the ADA regulations require any Ashford hotel that offers transportation services to purchase accessible vehicles or to provide equivalent transportation services to persons with disabilities. *See* 49 C.F.R. §§ 37.101, 37.171. Whether the hotel must purchase accessible vehicles, or instead provide equivalent transportation services, depends upon the capacity of the vehicle (over 16 persons, or 16 persons or less) and whether the hotel operates a fixed route transportation system, or a demand-responsive system. The lowest requirement (in this case, for hotels with demand responsive systems using a vehicle with capacity for 16 persons or less) is that the hotel provide equivalent transportation services if it does not own an accessible vehicle.

In their amended complaint, Plaintiffs allege two claims against Ashford: 1) disability discrimination under the ADA, 42 U.S.C. § 12182(a), for failing to ensure that transportation vehicles in use at its hotels are readily accessible to and usable by individuals with disabilities; and 2) violation of California Civil Code section 51(b) for denying Plaintiffs and the class members' rights to full and equal accommodations, advantages, facilities, privileges, or services offered at Ashford's hotels. Plaintiffs seek declaratory relief and a permanent injunction requiring Ashford to comply with the ADA and the Unruh Act, as well as an award of reasonable attorneys' fees and costs. Plaintiffs do not seek damages on behalf of the class or the named plaintiffs.

**B. Discovery and Mediation**

The parties conducted an in-person mediation session in July 2015 before retired Magistrate Judge James Larson. They continued to negotiate by telephone and email after that session, and simultaneously engaged in discovery and investigation. Plaintiffs contacted 68 Ashford hotels that provide transportation services to investigate whether those hotels provide

---

[1] Ashford's original discovery responses indicated that 73 hotels provided such services. It has since informed Plaintiffs that only 54 hotels currently offer transportation services. Campins Decl., Feb. 4, 2016, ¶ 8.

equivalent accessible transportation services. Plaintiffs also called third party transportation providers identified by Ashford to determine whether they were capable of providing equivalent accessible transportation services.

Following continued negotiations, the parties agreed to settle this matter in September 2015, and executed a settlement agreement on October 23, 2015. Plaintiffs filed an unopposed motion for preliminary approval of the settlement agreement on November 5, 2015. The court held a hearing on the motion on December 10, 2015 and granted preliminary approval on December 18, 2015. [Docket No. 75 (Prelim. Approval Order).]

### C.  The Settlement Agreement

The complete terms of the proposed settlement agreement are set forth in the Joint Stipulation and Settlement Agreement, which is attached as Exhibit A to Plaintiffs' motion for preliminary approval of the class action settlement. [Docket No. 66 (Pls.' Mot. for Preliminary Approval) Ex. A (Settlement Agreement).]

#### 1.  Injunctive Relief

The Settlement Agreement provides a comprehensive scheme for injunctive relief, requiring all Ashford-owned and/or operated hotels to come into compliance with ADA regulations that require hotels that offer transportation services to provide equivalent transportation services to people who use wheelchairs or scooters. The Settlement Agreement sets forth what "compliance" means, with specific attention to ensuring that any third party transportation providers utilized by Ashford hotels provide equivalent accessible transportation. Settlement Agreement ¶ 5. The Settlement Agreement explicitly requires that Ashford hotels provide accurate information to potential hotel guests so that no guests are erroneously deterred. *Id.* ¶ 5.c. Ashford will provide information to Plaintiffs regarding the current status of the hotels that provide transportation services to their guests, as well as any applicable third party transportation providers. *Id.* ¶ 4. Finally, Ashford will notify all companies that directly manage Ashford's hotels about the Settlement Agreement and the management companies' obligations under the law, as well as any hotel's non-compliance with the Settlement Agreement. *Id.* ¶ 6.

To ensure that Ashford hotels come into compliance, the Settlement Agreement sets forth a

multistage, three-year monitoring process that involves both a third-party monitor and monitoring by Plaintiffs' counsel. *Id*. ¶ 7. Ashford will continue to provide information to Plaintiffs throughout the monitoring process, and the monitoring and compliance process is designed to ensure that all hotels are in full compliance with the ADA by the end of the third year of the Settlement Agreement. *Id*. ¶¶ 7, 8. The parties have mutually selected a third-party monitor, Progressive Management Resources, Inc. ("PMR"), which is a firm with experience in compliance and monitoring with respect to public accommodations. Ashford will pay the fees and costs of monitoring. Settlement Agreement ¶ 7. The parties have also agreed to a dispute resolution process during the term of the Settlement Agreement. *Id*. at ¶ 14.

### 2. Released Claims

The settlement agreement defines the class as

> all individuals with disabilities who use wheelchairs or scooters for mobility who, from January 15, 2013 to the date of preliminary approval of the Settlement, have been denied the full and equal enjoyment of transportation services offered to guests at Hotels owned and/or operated by Ashford because of the lack of equivalent accessible transportation services at those Hotels.

Settlement Agreement ¶ 1. Plaintiffs and the class members will release any and all past or present claims as of the date of preliminary approval of the settlement for injunctive or declaratory relief against Ashford or its subsidiary or affiliated entities that are based on the ADA, the Unruh Act, or any public accommodation provision of any federal, local, or state statutory, regulatory, or common law concerning the provision of wheelchair accessible transportation services at Ashford hotels. *Id*. at ¶ 15(a). While Plaintiffs Cupolo-Freeman and Reiskin further agree to release any claims for monetary damages against Ashford, its subsidiary, and affiliated entities, the Settlement Agreement does not release any claims on behalf of the class members for damages. *Id*. ¶ 15.

### 3. Attorneys' Fees and Costs and Costs of Administration and Monitoring

The Settlement Agreement authorizes class counsel to seek an award of attorneys' fees and costs up to $165,000. This amount includes fees for work performed in connection with this lawsuit as well as fees for future monitoring and evaluating compliance with the settlement. Settlement Agreement ¶ 11.

### D. Notice to the Class

The parties proposed, and the court ordered, dissemination of the class notice by email to known disability advocacy groups and independent living centers, as well as to persons with disabilities who have contacted CREEC about problems with accessible hotel transportation. Pursuant to the preliminary approval order, on December 21, 2015, Plaintiffs sent class notice by email to 655 disability advocacy organizations and 43 individuals. Wilensky Decl., Feb. 4, 2016, ¶¶ 4-6. Where the organizations lacked email addresses or where there were multiple locations and one of those locations lacked an email address, Plaintiffs also sent class notice via first class mail, which resulted in 666 emailed notices and 34 mailed notices. *Id*. at ¶ 6. Plaintiffs re-sent returned emailed and mailed notices. Ultimately, Plaintiffs were unable to reach only four organizations and one individual. *Id*. at ¶ 7. No class members objected to the settlement.

## II. CLASS CERTIFICATION

For the reasons set forth in the court's preliminary approval order, the court finds that the proposed settlement class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2). The settlement class consists of:

> All individuals with disabilities who use wheelchairs or scooters for mobility who, from January 15, 2013 to the date of preliminary approval of the Settlement, have been denied the full and equal enjoyment of transportation services offered to guests at Hotels owned and/or operated by Ashford because of the lack of equivalent accessible transportation services at those Hotels.

Prelim. Approval Order at 5-6.

## III. FINAL APPROVAL OF SETTLEMENT

Federal Rule of Civil Procedure 23(e) provides that a class action may not be settled without court approval. "If the proposal would bind class members, the court may approve it only after a hearing and on a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Approval under Rule 23 involves a two-step process: (1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

The primary concern of Rule 23(e) is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."

*Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). To assess a proposed settlement, courts balance the following non-exclusive factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Not all of these factors will apply to every class action settlement, and in certain circumstances, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 525-26 (citing *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993)). The district court's role in evaluating a proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties," and that the settlement is fair as a whole. *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009). It is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms. *Officers for Justice,* 688 F.2d at 625; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." (citation and internal quotation marks omitted)). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [the judge] is exposed to the litigants and their strategies, positions, and proof." *Id.* (citation and quotation marks omitted).

The court has evaluated the proposed settlement for overall fairness under the relevant factors and concludes that settlement is appropriate. With respect to the strength of Plaintiffs' case, the parties reached settlement before the court considered the merits of their claims. However, Ashford acknowledges that it could be found statutorily liable in the event of an ADA violation. Ashford states that had a settlement not been reached, it would have contested class certification and the type of injunctive relief available, which could have extended the litigation,

6

causing considerable expense. The proposed settlement provides meaningful injunctive relief to the class members on a much shorter time frame than otherwise possible. All Ashford hotels that provide transportation services to guests will provide either a wheelchair-accessible vehicle or equivalent accessible transportation. The hotels will be held accountable pursuant to a thorough monitoring process, which is designed to achieve full compliance with the ADA by the end of the third year of the Settlement Agreement. The extent of discovery also supports settlement. Plaintiffs had extensive information in mediation followed by formal discovery that enabled them to make a thorough assessment of the class's claims.

Further, the settlement is the product of good faith, non-collusive, arms-length negotiations by experienced counsel after three mediation sessions, warranting a presumption in favor of approval. *See Officers for Justice*, 688 F.2d at 625. Class counsel are highly skilled and experienced class action litigators with significant expertise in vindicating the rights of disabled individuals, and counsel firmly supports approval of the agreement. Finally, the reaction of class members to the proposed settlement strongly favors approval. No class members objected to the proposed settlement. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) (indicating that the number of objectors is "a factor to be considered when approving a settlement").

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, reasonable and adequate." *See Officers for Justice*, 688 F.2d at 625. Therefore, the court grants final approval to the class settlement.

## IV. ATTORNEYS' FEES AND COSTS

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, courts "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted).

The ADA provides for an award of reasonable attorneys' fees and costs to prevailing parties. 42 U.S.C. § 12205. The Ninth Circuit has approved the "lodestar method" for calculating

a reasonable attorneys' fee in "class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking social beneficial litigation." *In re Bluetooth*, 654 F.3d at 941. The court determines the lodestar by multiplying the number of hours reasonably expended on the matter by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). The reasonable hourly rate depends on "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). Although the court presumes that the lodestar represents a reasonable fee, *Jordan*, 815 F.2d at 1262, the court may adjust it upward or downward to reflect " a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 942 (quoting *Hanlon*, 150 F.3d at 1029 (citation omitted)). "Foremost among these considerations, however, is the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 942.

Plaintiffs request a fee award of $157,597.12 and reimbursement of $7,402.88 for costs, for a total of $165,000. This amount includes fees for work performed in connection with this lawsuit as well as fees for future monitoring and evaluating compliance with the settlement. According to class counsel, as of January 30, 2016, counsel's lodestar is $192,497.00, reflecting 370.1 hours. Wilensky Decl. ISO Mot. for Fees ("2d Wilensky Decl."), Feb. 4, 2016, ¶ 8. The lodestar reflects the exercise of billing judgment to omit 90.1 hours, and does not include time after January 30, 2016 relating to obtaining final approval of the settlement or monitoring, which will continue for three years after final approval. *Id*. The requested amount, $157,597.12, represents 82% of counsel's lodestar. *Id*.

Plaintiffs submitted a detailed description of the work performed by counsel in this case, along with an itemization of their attorneys' fees and costs, including requested hourly rates, as summarized in the declarations of Julie Wilensky and Julia Campins. 2d Wilensky Decl. ¶¶ 12-22, 24, 25, Exs. 1, 2; Campins Decl. ISO Mot. for Fees ("2d Campins Decl."), Feb. 4, 2016, ¶¶ 13,

14, 16. Class counsel requests their 2015 hourly rates. For CREEC, these rates include $900 per hour for Bill Lann Lee, a 1974 law school graduate who served as the Assistant United States Attorney General for Civil Rights and has been litigating antidiscrimination civil rights actions for more than 40 years; $750 per hour for Tim Fox, a 1991 law school graduate who is one of the nation's leading disability rights class action practitioners; $500 per hour for Wilensky, a 2007 law school graduate who litigates class and complex civil rights actions and individual impact litigation; $430 per hour for Sarah Morris, a 2010 law school graduate; and $250 for paralegal Marissa McGarry. 2d Wilensky Decl. ¶¶ 28-47. For Campins Benham-Baker, LLP, counsel requests an hourly rate of $550 per hour for founding partner Campins, a 2005 law school graduate who specializes in civil rights and employment cases and has significant class action experience. Class counsel also seek fees for work by Lee and Wilensky when they practiced at Lewis, Feinberg, Lee & Jackson, P.C. ("LFLJ") at hourly rates of $900 and $500, respectively, as well as rates of $360 per hour for a 2009 law school graduate and $225 per hour for a paralegal who also worked on this case at LFLJ. 2d Campins Decl. ¶¶ 7, 8, 15; 2d Wilensky Decl. ¶¶ 48, 52. Finally, class counsel seeks $585 per hour for work by Colorado Cross-Disability Coalition ("CCDC") Legal Director Kevin Williams, a 1996 law school graduate, and $200 per hour for a CCDC program assistant. 2d Wilensky Decl. ¶ 54.

The court finds that the hourly rates requested are in line with the market rates charged by attorneys and paralegals of similar experience, skill, and expertise practicing in the Northern District of California. Further, the number of hours that class counsel spent on this case was reasonable in light of the issues presented in this litigation and the comprehensive, nationwide injunctive relief obtained for the class. Class counsel have reasonably accounted for and eliminated unnecessary or duplicative hours. No class member objected to class counsel's fee request. Accordingly, the court concludes that the attorneys' fee requested is reasonable. The court awards class counsel $157,597.12.

Class counsel is also entitled to reimbursement of reasonable expenses. Fed. R. Civ. P. 23(h); *see Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). The court has examined the expenses incurred by

class counsel. 2d Wilensky Decl. Ex. 2. The expenses are reasonable and of the type that would normally be charged by an attorney to a fee-paying client. *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). The court awards class counsel $7,402.88 in expenses.

## V. CONCLUSION

For the reasons stated above, the court approves the settlement. The court also awards class counsel $157,597.12 in attorneys' fees and $7,402.88 in expenses.

**IT IS SO ORDERED.**

Dated: March 22, 2016



Donna M. Ryu
United States Magistrate Judge